IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVE BAKER,                         §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §      CIVIL ACTION NO. H-12-2241
                                     §
TEXAS DEPARTMENT OF CRIMINAL         §
JUSTICE, et al.,                     §
                                     §
        Defendants.                  §

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] are: (1) Defendants Texas Department of Criminal Justice ("TDCJ"), Frank Szymczak[2] ("Szymczak"), Elton S. Sims ("Sims"), David Kramer ("Kramer"), and Daniel Melchor's ("Melchor") Motion for Summary Judgment[3] (Doc. 30); (2) Plaintiff's Motion for Spoliation Sanction (Doc. 46); (3) Defendant Steven Martinez' ("Martinez") Motion to Quash Service and Dismiss (Doc. 52); and (4) Plaintiff's Motion for Partial Summary Judgment (Doc. 59).

The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 35.

[2]     Defendant Szymczak's name is alternatively spelled "Szymcak."  See, e.g., Doc. 30, Defs. TDCJ, Szymczak, Sims, Kramer & Melchor's Mot. for Summ. J. ("Defs.' Mot. for Summ. J.") p. 1.

[3]     Although nominally a motion for summary judgment, the motion actually seeks only partial summary judgment as it does not seek dispositive rulings on all pending causes of action against all Defendants.  To avoid confusion, the court refers to the motion by its given title.

forth below, the court **RECOMMENDS** that Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor's motion be **DENIED**, Defendant Martinez' motion be **DENIED**, and Plaintiff's dispositive motion be **DENIED**.

Plaintiff's Motion for Spoliation Sanction is **DENIED** at this time with leave to reassert it at the time of trial. Jury instructions are best determined by the trial judge.

Defendants TDCJ, Brad Livingston[4] ("Livingston"), Szymczak, Sims, Kramer, and Melchor object to one of the exhibits to Plaintiff's response to their motion as hearsay. The exhibit is an expert report by Heather Hughes, a deafness resource specialist at the Deaf Action Center.[5] The motion is **OVERRULED** as the court does not rely on the information therein.

## I. Case Background

Plaintiff filed this lawsuit against the state prison system, its executive director, and five prison officers for violating Plaintiff's rights under Title II of the Americans with Disabilities Act[6] ("Title II" or "ADA"), Section 504 of the Rehabilitation Act[7] ("Section 504" or "RA"), and the Due Process

---

[4]     Although not a party to the motion for summary judgment, Defendant Livingston joined the reply. Compare Doc. 30, Defs.' Mot. for Summ. J. p. 1 with Doc. 53, Defs. TDCJ, Livingston, Szymczak, Sims, Kramer, & Melchor's Reply ("Reply") p. 1.

[5]     See Doc. 47-8, Ex. 8 to Pl.'s Resp. to Defs. TDCJ, Szymczak, Sims, Kramer, and Melchor's Mot. for Summ. J. ("Pl.'s Resp."), Expert Report of Heather Hughes.

[6]     42 U.S.C. §§ 12131-12134.

[7]     29 U.S.C. § 794.

Clause of the U.S. Constitution.[8]

## A.  **Factual History**

Plaintiff was born with severe hearing loss in one ear and partial hearing loss in the other.[9]  His hearing loss became progressively worse over the years to the point that hearing aids could help with background noises but did not allow him to hear speech.[10]  A stroke that he suffered in 1998 damaged his vocal chords and, as a result, he can no longer speak.[11]  Plaintiff uses a wheelchair for mobility and suffers from impaired vision.[12] Plaintiff communicates only through written language.[13]

Plaintiff is an inmate at the state prison system's Wallace Pack I Unit ("Pack Unit"), located in Navasota, Texas.[14]  As an inmate, Plaintiff received an Offender Orientation Handbook and a copy of the Disciplinary Rules and Procedures.[15]  He was assigned

---

[8]     See Doc. 1, Pl.'s Original Compl.

[9]     Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 3.

[10]    Id.  Plaintiff stated that he stopped wearing hearing aids in 2009. Id.

[11]    Id.

[12]    Id. ¶ 4.

[13]    Id. ¶ 5.

[14]    Id. ¶ 2.

[15]    See Doc. 53-2, Ex. I to Reply, Offender Orientation Handbook; Doc. 53-3, Ex. J to Reply, Disciplinary Rules & Procedures for Inmates; Doc. 60-5, Ex. E to Defs. TDCJ & Livingston's Resp. to Pl.'s Mot. for Partial Summ. J. ("Defs.' Resp."), Rogelio Perez's ("Perez") Dep. p. 35.  Perez testified that inmates receive the orientation handbooks when they arrive at the unit, but the court did not locate evidence of Defendant TDCJ's practice of handing out the disciplinary

to Assistive Disability Services ("ADS"), a program that provides him with assistive devices, such as paper and pens and a wheelchair.[16]  Additionally, ADS issued him two medical passes that alert prison workers to his hearing and speaking disabilities.[17]

## 1.  Disciplinary Hearings

TDCJ inmates who are cited for minor disciplinary offenses are entitled to administrative hearings.[18]  Pursuant to Defendant TDCJ's Offender Disciplinary Program, a disciplinary hearing officer ("DHO") settles the issue by judicial process, serving as judge and jury.[19]  The DHO is tasked with following established procedure, deciding the facts, furthering the goal of fairness, fostering a formal demeanor, completing forms, and being accountable for the decisions made.[20]  The Disciplinary Hearing Manual outlines the steps to be taken before, during, and after hearings.[21]

Before the hearing, the offender is to be given notice of the disciplinary charges, advised of the right to submit a written

---

rules.  Plaintiff does not dispute that he received a copy.

[16]    Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 6.

[17]    Id. ¶ 7.

[18]    See generally, Doc. 47-3, Ex. 3 to Pl.'s Resp., Def. TDCJ's Disciplinary Manual.

[19]    See id. p. 82; Doc. 47-24, Ex. 24 to Pl.'s Resp., Offender Disciplinary Program Chart.

[20]    Doc. 47-3, Ex. 3 to Pl.'s Resp., Def. TDCJ's Disciplinary Manual p. 82.

[21]    See Doc. 47-4, Ex. 4 to Pl.'s Resp., Def. TDCJ's Disciplinary Manual pp. 138-39.

statement or make a verbal statement at the hearing, advised of the right to waive attendance at the hearing, given a copy of the disciplinary case, and given twenty-four hours' notice of the hearing.[22]   During the hearing, the DHO is to ensure that the offender understands the right to give a written or verbal statement, to read the charges to the offender and ask for a plea, to allow the offender an opportunity to give a statement, to determine innocence or guilt, to impose punishment if applicable, to have the offender sign the disciplinary report and hearing record, and to advise the offender of the right to appeal.[23]   The Disciplinary Hearing Manual provides a typed script for the DHO to follow, which the DHOs uniformly read aloud to the inmates.[24]   After the hearing, the DHO is to submit the report so that it can be entered into the computer system.[25]

From February 2011 to March 2013, nine disciplinary cases against Plaintiff resulted in hearings.[26]   The first case stemmed

---

[22]   Id.

[23]   Id. p. 139.

[24]   Id. pp. 140-41; Doc. 47-7, Ex. 7 to Pl.'s Resp., Def. Kramer's Dep. pp. 32, 38; Doc. 47-10, Ex. 10 to Pl.'s Resp., Def. Szymczak's Dep. p. 43; Doc. 47-18, Ex. 18 to Pl.'s Resp., Perez's Dep. p. 11.

[25]   Doc. 47-4, Ex. 4 to Pl.'s Resp., Def. TDCJ's Disciplinary Manual  p. 139.

[26]   See Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6156, TDCJ Disciplinary Report & Hr'g R. Dated Feb. 26, 2011; Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6151, TDCJ Disciplinary Report & Hr'g R. Dated Apr. 12, 2011; Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6144, TDCJ Disciplinary Report & Hr'g R. Dated June 9, 2011; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6132, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 19, 2011; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6118, TDCJ Disciplinary Report & Hr'g

from Plaintiff's refusal, on February 23, 2011, to keep an audiologist appointment at a facility outside of the prison unit.[27] Plaintiff explained in writing that he was suffering from ear infections in both ears and, from past experience, did not believe that an appointment with the audiologist would be productive.[28] Another handwritten note included the question, "Do you want 2 [sic] get the hearing over with now[?]" and the answer, "May as well."[29] That paper also contained the words "not guilty" and a portion of his explanatory statement.[30]

In addition to the handwritten notes, the documentation from that disciplinary incident included a Refusal of Treatment or Services, an Offense Report, a Preliminary Investigation Report,

---

R. Dated Sept. 25, 2011; Doc. 30-6, Ex. F to Defs.' Mot. for Summ. J., BAKER 5647, TDCJ Disciplinary Report & Hr'g R. Dated Jan. 29, 2012; Doc. 30-7, Ex. G to Defs.' Mot. for Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-2, Ex. 2 to Pl.'s Mot. for Partial Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-3, Ex. 3 to Pl.'s Mot. for Partial Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated  Mar. 4, 2013. Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 10-66; Doc. 59-2, Ex.  2  to Pl.'s Mot.  for Partial Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-3, Ex. 3 to Pl.'s Mot. for Partial Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated  Mar. 4, 2013.

[27]      See Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6157, Offense Report Dated Feb. 24, 2011; Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6160, Refusal of Treatment or Servs. Dated Feb. 23, 2011; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 10.

[28]      See Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6161-64, Handwritten Notes.  Plaintiff admits that he was able to write a statement before the hearing but denies having been able to explain it or to provide more details at the hearing.  See Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 12.

[29]      Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6163, Handwritten Note.

[30]      Id.

6

and a TDCJ Disciplinary Report and Hearing Record.[31]  Plaintiff's signature was on all of the documents except the Offense Report, variously confirming refusal of the appointment, notification of the offense and hearing, and receipt of the final report.[32]

Defendant Kramer conducted the disciplinary hearing on February 26, 2011.[33]  Although Plaintiff showed his medical passes, Defendant Kramer did not communicate with Plaintiff in writing.[34] Plaintiff could not hear Defendant Kramer when he read the script to Plaintiff during the hearing.[35]  Defendant Kramer remembered Plaintiff writing a note to say that he could not hear Defendant Kramer very well, at which point Defendant Kramer closed the door of the room, turned off fans and anything that made noise, spoke loudly, and pointed out the charges on the form so that Plaintiff could read them.[36]  Def. Kramer also remembered pointing to his name tag and having the hearing script on the desk so that he was able to point out each part as he covered it.[37]

---

[31]    See Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6156-58, 6160, Documentation.

[32]    See id. BAKER 6156, 6158, 6160.

[33]    Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6156, TDCJ Disciplinary Report & Hr'g R. Dated Feb. 26, 2011; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 10.

[34]    Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 11.

[35]    See Doc. 47-7, Ex. 7 to Pl.'s Resp., Def. Kramer's Dep. p. 51; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 11.

[36]    Doc. 47-7, Ex. 7 to Pl.'s Resp., Def. Kramer's Dep. p. 51.

[37]    Doc. 60-4, Ex. D to Defs.' Resp., Def. Kramer's Dep. pp. 49, 54, 59.

Defendant Kramer found Plaintiff guilty and sentenced him to the loss of seven days of recreation and seven days of commissary privileges and pointed out to Plaintiff the portion of the hearing record where the punishment was listed.[38]   Defendant Kramer only kept and submitted the notes that Plaintiff wanted to have submitted.[39]   Plaintiff filed a grievance, alleging that he did not receive accommodation for his speech and hearing disabilities.[40] No procedural errors were found at the first step of the grievance procedure, and, upon review at the second step, the disciplinary charge was found to be appropriate and the verdict to be supported by evidence.[41]

Plaintiff refused to keep off-unit medical appointments on April 4, June 6, August 31, September 14, and September 21, 2011, leading to five separate disciplinary hearings.[42]   For each of these, Pack Unit officers completed a Refusal of Treatment or

---

[38]     See Doc. 30-1, Ex. A to Defs.' Mot. for Summ. J., BAKER 6156, TDCJ Disciplinary Report & Hr'g R. Dated Feb. 26, 2011; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 13; Doc. 60-4, Ex. D to Defs.' Resp., Def. Kramer's Dep. p. 52.

[39]     Doc. 47-7, Ex. 7 to Pl.'s Resp., Def. Kramer's Dep. p. 51.

[40]     Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 14.

[41]     Id. ¶¶ 15-17.

[42]     See Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6151, TDCJ Disciplinary Report & Hr'g R. Dated Apr. 12, 2011; Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6144, TDCJ Disciplinary Report & Hr'g R. Dated June 9, 2011; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6132, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 19, 2011; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6118, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 25, 2011; Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5668, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 7, 2011.

Services, an Offense Report, a Preliminary Investigation Report, and a TDCJ Disciplinary Report and Hearing Record, all except the Offense Report bearing Plaintiff's signature.[43]  For four of the cases, Plaintiff made handwritten statements on blank paper[44] that were summarized on the TDCJ forms.[45]  In the other case, it appears that Plaintiff handwrote his statement on the Preliminary Investigation Report itself.[46]

Defendant Sims conducted the hearing on the April 2011 offense; Defendant Melchor conducted the hearing on the June 2011 offense; Defendant Martinez conducted the hearing on the August 2011 offense; Defendant Szymczak conducted the hearing on the first September 2011 offense; and Defendant Martinez conducted the hearing on the second September 2011 offense.[47]  Although the manner

_____

[43]   See Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6151-54, Documentation; Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6144-46, 6148, Documentation; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6132-34, Documentation; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6118-20, 6122, Documentation; Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5668-71, 5663, Documentation.

[44]   The documentation for two separate offense dates has the exact same handwritten notes attached.  Compare Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6149-50, Handwritten Notes (including notes with the June 2011 documentation); Doc. 47-14, Ex. 14 to Pl.'s Resp., Handwritten Notes (same) with Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5672-73, Handwritten Notes (including the same notes with the August/September 2011 documentation).

[45]   See Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6146, 6149-50, Documentation; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6133-38, Documentation; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6120, 6123-24, Documentation; Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5670, 5672-73.

[46]   See Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6153, Prelim. Investigation Report Dated Apr. 5, 2011.

[47]   See Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6151, TDCJ Disciplinary Report & Hr'g R. Dated Apr. 12, 2011; Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6144, TDCJ Disciplinary Report & Hr'g R. Dated June 9,

in which the DHOs conducted the hearings differed somewhat, none of them communicated with Plaintiff in writing, despite Plaintiff's showing each of them his medical passes.[48]   All of the DHOs found Plaintiff guilty and imposed punishment that ranged from a reprimand to as many as thirty days of lost recreation and/or commissary privileges.[49]   Plaintiff filed a grievance in each case, and, ultimately, each hearing decision was upheld at the first and second steps of the appeal process.[50]

Two other hearings were held after Plaintiff filed this

---

2011; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6132, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 19, 2011; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6118, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 25, 2011; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 33; Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5668, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 7, 2011.

    Evidence submitted by Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor also includes documentation from a January 2012 disciplinary hearing for unauthorized storage of property.  See Doc. 30-6, Ex. F to Defs.' Mot. for Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated Jan. 29, 2012.  Defendant Kramer conducted that hearing but did not find Plaintiff guilty or impose any punishment.  See id.  Plaintiff is not complaining about that hearing.  See Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl.

[48]    Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 19, 26, 34, 39, 47; see also Doc. 47-10, Ex. 10 to Pl.'s Resp., Def. Szymczak's Dep. pp. 25-27, 31, 53; Doc. 47-12, Ex. 12 to Pl.'s Resp., Def. Sims' Dep. p. 35. Defendant Sims did not specifically remember Plaintiff's hearing but said that Plaintiff "probably wrote [his statement] verbatim on his notepad and then I wrote it down."  Doc. 60-6, Ex. F to Defs.' Resp., Def. Sims' Dep. p. 34. Defendant Sims also stated that Plaintiff wrote a note to inform Defendant Sims that he could read lips.  Id. p. 38.

[49]    See Doc. 30-2, Ex. B to Defs.' Mot. for Summ. J., BAKER 6151, TDCJ Disciplinary Report & Hr'g R. Dated Apr. 12, 2011; Doc. 30-3, Ex. C to Defs.' Mot. for Summ. J., BAKER 6144, TDCJ Disciplinary Report & Hr'g R. Dated June 9, 2011; Doc. 30-4, Ex. D to Defs.' Mot. for Summ. J., BAKER 6132, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 19, 2011; Doc. 30-5, Ex. E to Defs.' Mot. for Summ. J., BAKER 6118, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 25, 2011; Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 28, 34, 41, 49; Doc. 60-1, Ex. A to Defs.' Resp., BAKER 5668, TDCJ Disciplinary Report & Hr'g R. Dated Sept. 7, 2011.

[50]    See Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 22-25, 29-32, 35-38, 42-45, 50-53.

lawsuit, one for the offense of refusing to obey an order in August 2012 and one for refusing to keep a medical appointment in February 2013.[51]  Rogelio Perez ("Perez") was the DHO on both of those occasions and, according to Plaintiff, failed to communicate with Plaintiff in writing.[52]  Perez, on the other hand, recalled that he wrote notes to Plaintiff and that he routinely gave inmates an opportunity to read the charges if they did not understand him.[53] Perez found Plaintiff guilty on both occasions and imposed punishment.[54]  As with the prior hearings, Plaintiff filed a grievance related to the first hearing with the same result, that is, affirming the guilty verdict.[55]  As of April of this year, Plaintiff was in the grievance process for the latter hearing.[56]

## 2.  __Closed Captioning__

---

[51]    <u>See</u> Doc. 59-2, Ex. 2 to Pl.'s Mot. for Partial Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-3, Ex. 3 to Pl.'s Mot. for Partial Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated Mar. 4, 2013.

[52]    <u>See</u> Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 54-66; Doc. 59-2, Ex. 2 to Pl.'s Mot. for Partial Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-3, Ex. 3 to Pl.'s Mot. for Partial Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated  Mar. 4, 2013.

[53]    Doc. 47-18, Ex. 18 to Pl.'s Resp., Perez's Dep. p. 22; Doc. 60-5, Ex. E to Defs.' Resp., Perez's Dep. pp. 24, 28-30.  Perez admitted that the documentation for those hearings did not include any of the notes and explained, "[I]t's not a rule that we have to save every note that we — that we write." Doc. 47-18, Ex. 18 to Pl.'s Resp., Perez's Dep. p. 22.

[54]    <u>See</u> Doc. 59-2, Ex. 2 to Pl.'s Mot. for Partial Summ. J., BAKER 5641, TDCJ Disciplinary Report & Hr'g R. Dated Aug. 9, 2012; Doc. 59-3, Ex. 3 to Pl.'s Mot. for Partial Summ. J., TDCJ Disciplinary Report & Hr'g R. Dated  Mar. 4, 2013.

[55]    <u>See</u> Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶¶ 58-61.

[56]    <u>See</u> <u>id.</u> ¶ 66.

Plaintiff watches television to pass time.[57]  Dayrooms in the front and back of Plaintiff's dormitory are each outfitted with a television.[58]  The televisions are on from 8:00 a.m. to 10:30 p.m. on weekdays and from 8:00 a.m. to 1:00 a.m. on weekends and holidays.[59]  Defendant TDCJ has policies on recreational activities, including television viewing but does not have a written policy on the use of closed captioning.[60]  However, the general policy is to "keep the closed captioning on."[61]

Closed captioning is not turned on consistently.[62]  The closed captioning was turned off from January 19, 2011, to May 22, 2011; it was turned on for a short period after that and then was intermittently left on.[63]

Plaintiff's ADS caseworker intervened on Plaintiff's behalf on two occasions, getting the closed captioning turned on for short periods.[64]  Hearing-capable inmates became upset at times about

---

[57]   Id. ¶ 67.

[58]   Id. ¶ 68.

[59]   Id.

[60]   See Doc. 47-9, Ex. 9 to Pl.'s Resp., Cody Ginsel's Dep. p. 31; Doc. 59-20, Ex. 20 to Pl.'s Mot. for Partial Summ. J., Offender Orientation Handbook p. 32.

[61]   Doc. 53-5, Ex. L to Reply, Cody Ginsel's Dep. p. 30.

[62]   Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl. ¶ 71.

[63]   Id. ¶ 72.

[64]   Id. ¶ 73.

12

having the closed captioning box on the screen.[65]   "[C]ertain officers" turned off the closed captioning.[66]   Plaintiff filed a grievance in November 2011, but Defendant TDCJ found that closed captioning was not mandatory and should be addressed with staff on an incident-by-incident basis.[67]

## B.  <u>Procedural History</u>

Plaintiff filed his original complaint on July 26, 2012.[68] Plaintiff alleged that Defendant TDCJ violated Title II and Section 504 by failing to provide reasonable accommodations for his hearing loss during disciplinary hearings and consistently failing to provide closed captioning on its televisions.[69]   Plaintiff alleged that the five officers, in their individual capacities, violated the Due Process Clause by failing to allow the use of notes or to provide assistive devices[70] at his disciplinary hearings.[71] Plaintiff also alleged that Defendant Livingston, in his official capacity as executive director of Defendant TDCJ, violated

---

[65]   Doc. 53-1, Ex. H to Reply, Cindy Crawford's Dep. p. 12.

[66]   <u>Id.</u> p. 13.

[67]   Doc. 59-1, Ex. 1 to Pl.'s Mot. for Partial Summ. J., Pl.'s Decl.  ¶¶ 73-76; Doc. 47-23, Ex. 23 to Pl.'s Resp., Grievance Dated Nov. 17, 2011.

[68]   <u>See</u> Doc. 1, Compl.

[69]   <u>See</u> <u>id.</u> pp. 8-9.

[70]   Although not mentioned in Plaintiff's amended complaint, an accommodation called Communication Access Realtime Translation (CART) is discussed in Plaintiff's briefs as the only reasonable accommodation for Plaintiff.  <u>See</u> Doc. 47, Pl.'s Resp. pp. 19-20; Doc. 59, Pl.'s Mot. for Partial Summ. J. pp. 19, 21-22.

[71]   <u>See</u> Doc. 1, Compl. p. 10.

13

Plaintiff's due process rights by prohibiting him from meaningfully participating in the hearings.[72]

Plaintiff immediately requested that summonses issue for all seven Defendants.[73] Plaintiff served Defendants TDCJ and Livingston on August 1, 2012.[74] On August 10, 2012, the process server unsuccessfully attempted to contact the warden of the prison where the individual defendants worked to arrange service.[75] On August 16, 2012, the warden refused to allow the process server on the unit.[76] The process server was also unsuccessful in his attempt to serve Defendant Martinez at his home because it was on prison grounds.[77] Defendants TDCJ, Livingston, Szymczak, Kramer, and Melchor filed an answer on August 22, 2012.[78]

According to an email dated September 5, 2012, between two of Defendants' attorneys, one of the attorneys had represented to Plaintiff's counsel that she would contact yet-to-be-served

---

[72]   See id.

[73]   See Doc. 2, Req. for Issuance of Summons.

[74]   See Docs. 5, 6, Returns of Serv.

[75]   Doc. 56-2, Ex. 2 to Pl.'s Resp. to Def. Martinez' Mot. to Quash Serv. & Dismiss, Decl. of Billy Wells ¶ 5 ("On Thursday, August 9, 2012, we were supposed to set up an appointment with the warden, in order to serve the defendants at the prison unit, but he did not call. That Friday, August 10, 2012, I called the warden several times, but he did not return any phone calls.").

[76]   Id. ¶ 6.

[77]   Id. ¶ 7.

[78]   See Doc. 8, Defs. TDCJ, Livingston, Szymczak, Kramer, and Melchor's Answer. The docket sheet does not reflect when or if Defendants Szymczak, Sims, Kramer, and Melchor were served.

14

Martinez the following day to inquire whether he would like the Office of the Attorney General for the State of Texas, her employer, to accept service on his behalf.[79]  The following day, the same attorney for Defendants emailed Plaintiff's counsel notifying her that Defendant Martinez "requested that I receive service on his behalf."[80]  Also on September 6, 2012, Defendants' counsel filed a Notice of Appearance on behalf of "Defendants" to notify the court that the Texas Attorney General would provide representation.[81]  Although the document itself does not list Defendants individually, the docket entry notation identifies Defendant Martinez among those represented.[82]

Defendant Sims answered the complaint on October 22, 2012.[83] Defendant Livingston filed a motion for judgment on the pleadings on January 4, 2013.[84]  Within two weeks of the filing of Defendant Livingston's motion, Plaintiff filed a motion for leave to amend his complaint, seeking, "out of an abundance of caution, to clarify

---

[79]    See Doc. 52-1, Ex. A to Def. Martinez' Mot. to Quash Serv. & Dismiss, Email from Calysta Johnson to Kim Coogan Dated Sept. 5, 2012.

[80]    Doc. 56-1, Ex. 1 to Pl.'s Resp. to Def. Martinez' Mot. to Quash Serv. & Dismiss, Email from Calysta Johnson to Michelle Smith Dated Sept. 6, 2012.

[81]    See Doc. 9, Notice of Appearance.

[82]    Id.; see also Doc. 52, Def. Martinez' Mot. to Quash Serv. & Dismiss p. 1 ("[U]ndersigned counsel filed a notice of appearance as co-counsel wherein she inadvertently listed Martinez."). According to Defendant Martinez' motion, the attorney "shortly thereafter explained the oversight to Plaintiff's counsel in a telephone conversation[] and clarified that she did not represent Martinez." Id.

[83]    See Doc. 14, Answer.

[84]    See Doc. 22, Def. Livingston's Mot. for J. on the Pleadings.

15

his claims and correct alleged technical defects against [Defendant] Livingston" in response to Defendant Livingston's motion.[85]  The court granted leave.[86]

Plaintiff's amended complaint, in addition to making minor edits and corrections, clarified that he is seeking injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 ("Section 1983") and Ex Parte Young, 209 U.S. 123 (1908), against Defendant Livingston in his official capacity for ongoing violations of Plaintiff's due process rights.[87]  Plaintiff also added the allegation that Defendant TDCJ had a "custom and practice" of allowing employees "to arbitrarily refuse to accommodate prisoners' hearing disabilities during disciplinary hearings."[88]

On March 20, 2013, Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor filed the pending motion for summary judgment.[89]  The movants asserted that Martinez had not yet been served.[90]  On March 25, defense counsel sent Plaintiff's counsel an email regarding Defendants' depositions, stating that Defendant Martinez had

---

[85]   Doc. 23, Pl.'s Unopposed Mot. for Leave to File Am. Compl. p. 2.

[86]   See Doc. 24, Order Dated Jan. 17, 2013.

[87]   Doc. 25, Pl.'s 1st Am. Compl. pp. 1, 11.

[88]   Id. p. 5.

[89]   See Doc. 30, Defs.' Mot. for Summ. J.

[90]   See id. p. 5.

retired and was not inclined to waive service.[91]   Defense counsel
provided Plaintiff with a last known address.[92]   Defense counsel
reminded Plaintiff's counsel again on April 4, 2013.[93]   Plaintiff
contacted the process server, requesting that he attempt service
again, but he declined.[94]

The case was referred to the undersigned on April 4, 2013.[95]
On April 25, 2013, the court issued a Memorandum and Recommendation
on Defendant Livingston's dispositive motion, finding that it
should be denied; the Memorandum and Recommendation was adopted.[96]
On May 14, 2013, Defendant Martinez was successfully served by a
constable at the last known address.[97]

On May 31, 2013, Plaintiff filed the pending motion for a
spoliation sanction and responded to the summary judgment motion.[98]
The court set a hearing on Plaintiff's spoliation motion, which the

---

[91]     See Doc. 52-2, Ex. B to Def. Martinez' Mot. to Quash Serv. & Dismiss,
Email from Calysta Lantiegne to Michelle Smith Dated Mar. 25, 2013.

[92]     See id.

[93]     See Doc. 52-2, Ex. B to Def. Martinez' Mot. to Quash Serv. & Dismiss,
Email from Calysta Lantiegne to Michelle Smith Dated Apr. 4, 2013.

[94]     See Doc. 56-2, Ex. 2 to Pl.'s Resp. to Def. Martinez' Mot. to Quash
Serv. & Dismiss, Decl. of Billy Wells ¶ 8.

[95]     See Doc. 35, Order Dated Apr. 4, 2013.

[96]     See Doc. 42, Mem. & Recommendation Dated Apr. 25, 2013; Doc. 45,
Order Dated May 10, 2013.

[97]     See Doc. 50, Return of Serv.

[98]     See Doc. 46, Pl.'s Mot. for Spoliation Sanction; Doc. 47, Pl.'s Resp.

court postponed at Plaintiff's request.[99]  Before the hearing was held, Defendant Martinez filed the pending motion to dismiss.[100]  At the hearing, the parties argued both the motion for a spoliation sanction and Defendant Martinez' motion to quash service and dismiss.[101]  The court did not rule on either motion at that time, indicating to the parties that it would provide written orders on both.[102]  A little over a month after the hearing, Plaintiff filed a motion for partial summary judgment.[103]

The pending dispositive motions are fully briefed, and the court discusses all three in this memorandum, beginning with Defendant Martinez' motion.

## II.  Martinez' Motion to Quash Service and Dismiss

Pursuant to the Federal Rules of Civil Procedure ("Rules"), the court is authorized to dismiss a civil action for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  For individuals within the United States, service may be effected by delivering a copy of the summons and complaint to the individual personally, to the individual's usual place of abode, or to that individual's authorized agent, or service may be effected in accordance with the

---

[99]  See Doc. 48, Notice of Setting; Doc. 49, Unopposed Mot. to Continue Hr'g; Doc. 51, Notice of Setting.

[100]  See Doc. 52, Def. Martinez' Mot. to Quash Serv. & Dismiss.

[101]  See Oral R. of Hr'g Dated June 18, 2013.

[102]  See id.

[103]  See Doc. 59, Pl.'s Mot. for Partial Summ. J.

state law of the state in which the district court sits or in which service is effected. Fed. R. Civ. P. 4(e). Absent proper service of process, the court cannot exercise jurisdiction over a party named as a defendant. <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999).

Rule 4(m) sets the time limit at 120 days after a complaint is filed for service of a defendant. The court must dismiss the action against the unserved defendant or order that service be completed within a specified time. Fed. R. Civ. P. 4(m); <u>Thrasher v. City of Amarillo</u>, 709 F.3d 509, 511 (5th Cir. 2013). However, "if the plaintiff shows good cause for the failure [to serve timely], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The court has the discretion to extend the time for service even if the plaintiff lacks good cause. <u>Thrasher</u>, 709 F.3d at 511.

The burden is on the serving party to prove "good cause for failure to effect timely service." <u>Thrasher</u>, 709 F.3d at 511 (quoting <u>Sys. Signs Supplies v. U.S. Dep't of Justice, Wash., D.C.</u>, 903 F.2d 1011, 1013 (5th Cir. 1990)). Good cause requires, at a minimum, a showing of excusable neglect, which is more than simple inadvertence, mistake of counsel, or ignorance of the rules. <u>Id.</u> (quoting <u>Winters v. Teledyne Movible Offshore, Inc.</u>, 776 F.2d 1304, 1306 (5th Cir. 1985)). The plaintiff must establish good faith and a reasonable basis for not serving the summons and complaint within

the time allowed by the rules.  Id. (quoting Winters, 776 F.2d at 1306).

Martinez admits that he was eventually served but argues that service was not effected within the time limit provided in Rule 4(m).  Martinez contends that the delay in service justifies dismissal of the claims against him for insufficient service of process.  Plaintiff responds that he had good cause for failing to accomplish service of process on Martinez within 120 days of filing the complaint.

The deadline for service under Rule 4(m) fell on November 23, 2012.  The record reflects that, in early September 2012, within the time allotted for service, defense counsel offered to contact Martinez to inquire about accepting service on his behalf.  The following day, defense counsel reported to Plaintiff's counsel that Martinez had agreed to having her accept service on his behalf[104] and filed an appearance with the court on behalf of all Defendants, including Defendant Martinez.  Although defense counsel asserts in the motion that she immediately contacted Plaintiff's counsel to

---

[104]     The record contains emails that suggest Plaintiff's counsel served defense counsel on Defendant Martinez' behalf at that time.  See Doc. 56-1, Ex. 1 to Pl.'s Resp. to Def. Martinez' Mot. to Quash Serv. & Dismiss, Email from Scott Medlock to Calysta Johnson Dated Sept. 6, 2012 ("We'll send you the summons."); 56-1, Ex. 1 to Pl.'s Resp. to Def. Martinez' Mot. to Quash Serv. & Dismiss, Email from Michelle Smith to Andres Martinez Dated Sept. 10, 2012 ("Can you take care of this?  Thanks!").  Plaintiff bears the burden of proof regarding service; however, defense counsel has not produced any evidence suggesting that service was not effected at that time.  More importantly, the parties agree that service was effected on Defendant Martinez on May 14, 2013.  The issue raised in Defendant Martinez' motion is whether Plaintiff had good cause for effecting service in May 2013, after the expiration of the 120-day limit.  Obviously, if Plaintiff could prove service according to the email agreement at that time, there would be no timeliness issue.

explain that Defendant Martinez was listed in error, the docket itself does not contain any corrective filing.[105]

In March 2013, in Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor's summary judgment motion and in response to a notice of deposition for Defendant Martinez, defense counsel raised the issue of service as to Defendant Martinez.  At that time, defense counsel informed Plaintiff's counsel that he was not inclined to waive service.  Plaintiff's counsel made arrangements to have a constable serve Defendant Martinez, which was finally accomplished on May 14, 2013.

Given the mixed messages from defense counsel, on and off the record, and the apparent good faith efforts of Plaintiff's counsel in response to defense counsel's representations, the court finds a reasonable basis for Plaintiff's failing to serve Defendant Martinez within the Rule 4(m) time limit.  More importantly, Defendant Martinez' interests are aligned with the other defendants and were being protected by defense counsel from the outset.

The time for service should be extended until May 14, 2013, and Defendant Martinez' motion to quash service and dismiss should be denied.

### III. Motions for Partial Summary Judgment

Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor move for

---

[105]   The court also notes that the record contains only attorney argument, without any supporting evidence, to show that defense counsel was retracting its notice of appearance as to Defendant Martinez.

summary judgment only on Plaintiff's Title II cause of action.[106]
Plaintiff's motion for partial summary judgment argues that
Defendant TDCJ violated Plaintiff's rights under both Title II and
Section 504.  Plaintiff does not move for summary judgment against
the individual defendants.

A.  **Legal Standard**

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,

---

[106]   The court notes that Plaintiff explicitly stated in his amended
complaint that he was asserting the Title II claim against Defendant TDCJ only.
See Doc. 25, 1st Am. Compl. p. 8.

depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. _Celotex Corp._, 477 U.S. at 323; _Topalian v. Ehrman_, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial. See _Celotex Corp._, 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." _Evans v. City of Houston_, 246 F.3d 344, 348 (5th Cir. 2001); _see also_ _Boston Old Colony Ins. Co. v. Tiner Assocs. Inc._, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." _Honore v. Douglas_, 833 F.2d 565, 567 (5th Cir. 1987).

## B. **Analysis**

The parties' motions address the Title II and Section 504 claims only.

### 1. **Applicable Law**

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

23

discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government" and includes state prisons. 42 U.S.C. § 12131(1)(B); United States v. Ga., 546 U.S. 151, 154 (2006).

Eleventh Amendment immunity "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002)(citing U.S. Const. amend. XI). The Supreme Court established a test for deciding "whether Title II validly abrogates state sovereign immunity in a given case. A court should consider 'which aspects of the State's alleged conduct violated Title II' and then determine 'to what extent such misconduct also violated the Fourteenth Amendment.'" Hale v. King, 642 F.3d 492, 497–98 (5th Cir. 2011)(quoting United States v. Ga., 546 U.S. at 159). If both were violated, Title II abrogates Eleventh Amendment immunity. Id. at 498. If only Title II was violated, the court must determine whether Congress' purported abrogation is nevertheless valid as to that class of conduct. Id. (quoting United States v. Ga., 546 U.S. at 159).

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).   In 42 U.S.C. § 2000d-7(a)(1), Congress explicitly abrogated the Eleventh Amendment immunity of recipients of federal financial assistance from federal lawsuits that allege violations of Section 504.   Finding 42 U.S.C. § 2000d-7(a)(1) a constitutionally permissible exercise of Congress' spending power, the Fifth Circuit held that receipt of federal funds expressly waives Eleventh Amendment immunity for claims brought under Section 504.  Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 453 (5th Cir. 2005)(discussing Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 280-87 (5th Cir. 2005)).

## 2.  Discussion

The court begins with the issue of Eleventh Amendment immunity and works its way through the various arguments raised in the parties motions and responsive briefs.

Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor argue that Eleventh Amendment immunity under the ADA was validly abrogated by Congress only with regard to conduct that actually violates the U.S. Constitution.[107]  Plaintiff responds by citing case law relieving courts from the need to address the question of Eleventh Amendment immunity on a Title II claim when that claim

---

[107]   In their motion, Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor rely on this argument to seek summary judgment only on Plaintiff's allegations regarding closed captioning, asserting that the failure to provide closed captioning on television is not a constitutional violation.

duplicates the plaintiff's Section 504 claim.

The Fifth Circuit held that the rights and remedies granted by Title II and by Section 504 are almost identical.  Bennett-Nelson, 431 F.3d at 454 (citing Pace, 403 F.3d at 287-88).  Addressing failure to accommodate claims, the court held that, where Eleventh Amendment immunity does not bar the Section 504 claim, the court need not address whether immunity was validly abrogated under Title II "because the rights and remedies under either are the same for purposes of this case."[108]  Id. at 455.

Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor make no argument in favor of Eleventh Amendment immunity under Section 504, and there appears to be no room for that argument.  Defendant TDCJ admitted in a case a few years ago that it accepted federal financial assistance.  See Durrenberger v. Tex. Dep't of Crim. J., 757 F. Supp. 2d 640, 647 (S.D. Tex. 2010).  As a recipient of federal funds,[109] Defendant TDCJ waives Eleventh Amendment immunity for claims brought under Section 504 without consideration of whether a constitutional right is implicated.  See Bennett-Nelson,

---

[108]   The court explained that the only material difference is in the statutes' respective causation requirements.  Bennett-Nelson, 431 F.3d at 454.  The ADA does not require that discrimination be the sole reason for exclusion of or denial of benefits whereas the RA does.  Id.  In Bennett-Nelson, the court found that causation was not an issue in the claims of failure to accommodate before it because, "[i]f the accommodation is required[,] the defendants are liable simply by denying it."  Id. at 455.

[109]   Plaintiff points the court to a chart found on Defendant TDCJ's website that indicates Defendant TDCJ received federal funds for fiscal year 2012.  See Doc. 59, Pl.'s Mot. for Partial Summ. J. p. 15 n.102; Doc. 59-17, Ex. 17 to Pl.'s Mot. for Partial Summ. J, Def. TDCJ's Fiscal Year 2013 Operating Budget p. 5.

431 F.3d at 453.   Because Defendant TDCJ cannot raise Eleventh
Amendment immunity as a defense to Plaintiff's Section 504 claim,
the court need not address whether it precludes Plaintiff's Title
II claim.   See Bennett-Nelson, 431 F.3d at 455.

Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor also
argue that Plaintiff's claim with regard to closed circuit
captioning should be dismissed because it is prohibited by the
Prison Litigation Reform Act ("PLRA").[110]  Plaintiff argues the bar
does not apply to the types of damages he seeks.   Defendants TDCJ,
Livingston, Szymczak, Sims, Kramer, and Melchor did not pursue the
argument in their reply.

The PLRA states, in part: "No Federal civil action may brought
by a prisoner confined in a jail, prison, or other correctional
facility, for mental or emotional injury suffered while in custody
without a prior showing of physical injury . . . ."  42 U.S.C. §
1997e(e).   The statute prohibits actions in which a prisoner seeks
compensatory damages without any physical injury but does not apply
to other types of relief.   See Hutchins v. McDaniels, 512 F.3d 193,
196-98 (5th Cir. 2007)(stating that the bar does not apply to
nominal and punitive damages); Geiger v. Jowers, 404 F.3d 371, 375
(5th Cir. 2005)(stating that the bar does not apply to requests for
declarative or injunctive relief).   The PLRA specifically
authorizes the award of attorneys' fees to the extent explained in

---

[110]     42 U.S.C. §§ 1997-1997j.

27

the statute.  <u>See</u> 42 U.S.C. § 1997e(d).

Plaintiff is not seeking compensatory damages.  In his prayer for relief in his amended complaint, he requested declaratory relief, injunctive relief, nominal damages, punitive damages, attorneys' fees, and costs.[111]   The PLRA does not prohibit Plaintiff's action.

In their reply, Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor argue, for the first time,[112] that Defendant "TDCJ's minor disciplinary hearings need not comply with the Due Process Clause."[113]   They continue:

> Plaintiff has not actually pled a due process claim against any defendant.  However, [P]laintiff's claims against [Defendant] Livingston under <u>Ex Parte Young</u> and against [Defendant] TDCJ for violations of the ADA inherently require a constitutional violation.  To that extent, [P]laintiff's claims against [Defendant] TDCJ and [Defendant] Livingston should be dismissed, and claims against the individual correctional officer defendants under 42 U.S.C. § 1983 should be dismissed.[114]

This represents the first time that Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor requested summary judgment on Plaintiff's 42 U.S.C. § 1983 claims against the officer defendants in their individual capacities and Defendant Livingston in his

---

[111]    <u>See</u> Doc. 25, 1st Am. Compl. p. 12.

[112]    Defendants TDCJ and Livingston also argue this point in abbreviated form in their response to Plaintiff's Motion for Partial Summary Judgment, filed almost three months after the reply was filed.  <u>See</u> Doc. 60, Defs.' Resp. pp. 6-7.

[113]    Doc. 53, Reply p. 3.

[114]    <u>Id.</u>

official capacity.[115]   Moreover, the assertion that Plaintiff did not plead a due process claim is entirely incorrect.   Plaintiff explicitly pled a 42 U.S.C. § 1983 claim, alleging that Defendants Livingston, Szymczak, Sims, Kramer, Melchor, and Martinez violated of his constitutional rights under the Due Process Clause of the Fourteenth Amendment.[116]

The court will not entertain an entirely new argument presented in a reply brief in favor of summary judgment on a claim not mentioned in the original motion for summary judgment.  This is an improper use of the reply vehicle.   Therefore, the court does not consider whether Plaintiff successfully alleged a due process claim in connection with the disciplinary hearings that is sufficient to support his 42 U.S.C. § 1983 cause of action.  To the extent that Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor make this argument in support of summary judgment on Plaintiff's Title II claim, the court refers them to the discussion above, which explains why the court need not make a determination whether Plaintiff has alleged conduct that actually violates a constitutional right.

The court turns to the parties' arguments with regard to whether the summary judgment evidence entitles either party to

---

[115]   Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor make the same request several additional times in their reply brief.  See, e.g., id. pp. 5, 7, 9.

[116]   Doc. 25, 1st Am. Compl. pp. 9-10.

judgment as a matter of law.   Defendants TDCJ, Szymczak, Sims,
Kramer, and Melchor argue that Plaintiff's Title II claim
concerning the disciplinary hearings is factually untrue.
Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor cite to the
documentation of the disciplinary process and assert that it
"clearly show[s] that plaintiff does exchange written communication
with officers."[117]   In addition to opposing Defendants TDCJ,
Szymczak, Sims, Kramer, and Melchor's position on their summary
judgment motion, Plaintiff argues that he is entitled to summary
judgment on his Title II and Section 504 claims based on denial of
accommodations for the disciplinary hearings and television
viewing.

      In order to state a Title II or a Section 504 claim, a
plaintiff must prove: (1) that he is a qualified individual with a
disability; (2) that he was either excluded from participation in
or denied the benefits of the public entity's services, programs,
or activities, or was otherwise discriminated against by the public
entity; and (3) that the exclusion, denial of benefit, or
discrimination was by reason of the plaintiff's disability.   Hale,
642 F.3d at 499 (discussing Title II); see also 29 U.S.C. §
794(a)(requiring that the discrimination be "solely by reason of"
the disability); 42 U.S.C. § 12132 (requiring that the
discrimination be "by reason of" the disability); 42 U.S.C. § 12133

---

[117]     Doc. 30, Defs.' Mot. for Summ. J. p. 3.

(stating that the Section 504 remedies, procedures, and rights shall be the same for Title II); Hainze v. Richards, 207 F.3d 795, 799 (5ᵗʰ Cir. 2000)(pointing out that "[j]urisprudence interpreting either section is applicable to both").

Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor do not dispute that Plaintiff is a qualified individual with a disability. In fact, Defendant TDCJ assigned Plaintiff to ADS, a program designed to assist disabled inmates. In further support, Plaintiff cites legal authority recognizing individuals with hearing or speech impairments as qualified individuals with disabilities under Title II and Section 504.[118] Defendant TDCJ itself refers to the disciplinary process as "Offender Disciplinary Program."[119]

Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor do not contest that the disciplinary program is a service, program, or activity within the ambit of Title II and Section 504. In support of a finding that the disciplinary process is covered by Title II and Section 504, Plaintiff cites case law recognizing

---

[118]   Doc. 47, Pl.'s Resp. p. 17 (citing 42 U.S.C. § 12102(1)-(2); Delano-Pyle v. Victoria Cnty., Tex., 302 F.3d 567 (5ᵗʰ Cir. 2002); Durrenberger, 757 F. Supp. 2d at 640; Benavides v. Laredo Med. Ctr., Civil Action No. L-08-105, 2009 WL 1755004, at *1 (S.D. Tex. June 18, 2009); Salinas v. City of New Braunfels, 557 F. Supp. 2d 777 (W.D. Tex. 2008); Gottesman v. J.H. Batten, Inc., 286 F. Supp. 2d 604 (M.D. N.C. 2003); Dudley v. Hannaford Bros. Co., 190 F. Supp. 2d 69 (D. Me. 2002); Stalter v. Bd. of Co-op. Educ. Svcs. of Rockland Cnty., 235 F. Supp. 2d 323 (S.D.N.Y. 2002); see also Doc. 59, Pl.'s Mot. for Partial Summ. J. p. 17 (citing same law).

[119]   See Doc. 47, Pl.'s Resp. p. 18 (citing Doc. 47-24, Ex. 24 to Pl.'s Resp., Offender Disciplinary Program Chart).

disciplinary hearings as programs.[120]  Regarding closed captioning,
Defendants TDCJ and Livingston argue that the Fifth Circuit has
never made a determination as to whether television viewing is an
"activity" contemplated by Title II or Section 504 but has
determined that it is not a constitutional right.[121]

Defendants TDCJ and Livingston cite Aswegan v. Bruhl, 113 F.3d
109 (8th Cir. 1997), an Eighth Circuit case that held that cable
television, as sought by the plaintiff in that case, was "not a
public service, program, or activity within the contemplation of
the ADA."  Id. at 110.  There, the plaintiff was a prisoner whose
cell was "hardly fifty feet from the infirmary's communal
television room," but he "routinely lost petty disputes about
channel selections with the other infirmary inmates."  Id. at 109-
10.  The court disagreed with the district court's ordering the
installation of a cable television outlet in the plaintiff's cell,
finding that the plaintiff was not entitled to "access to cable
television beyond that already provided in the infirmary's
television room."  Id. at 110.  The facts of the Aswegan case
differ from those presently before this court, and its finding is
limited to the issue of whether the ADA requires more than the

---

[120]     Doc. 47, Pl.'s Resp. p. 18 (citing Hale, 642 F.3d at 492; Randolph
v. Rodgers, 170 F.3d 850 (8th Cir. 1999); Duffy Riveland, 98 F.3d 447 (9th Cir.
1996); Bonner v. Lewis, 857 F.2d 559 (9th Cir. 1988)); Doc. 59, Pl.'s Mot. for
Partial Summ. J. p. 18 (citing same cases).

[121]     Doc. 60, Defs.' Resp. pp. 4-5 (citing Scheanette v. Dretke, 199 F.
App'x 336 (5th Cir. 2006)(unpublished)).

common access to the activity of television viewing.   See id. Defendants TDCJ and Livingston fail to convince the court that, as a matter of law, television viewing is not an activity covered by Title II and Section 504.   In fact, Defendant TDCJ itself recognizes television viewing as a "[n]on-programmatic recreation activit[y]."[122]

The central debate in this case is a factual one:   whether Plaintiff was excluded from or denied the benefits of the disciplinary program for offenders and the recreational activity of television viewing by virtue of the failure to provide accommodations for his hearing and speech impairments.   The summary judgment evidence clearly reflects that several material facts are in dispute.

The court notes in particular that the parties have divergent recollections of the hearings.   Plaintiff testified that none of the DHOs communicated with him in writing at the hearing.   However, the DHOs' testimony suggests, not only did certain DHOs remember communicating in writing, at least two of them also remembered using other nonverbal indicators to communicate with Plaintiff.

The parties disagree whether the handwritten notes attached to the hearing documentation prove the DHOs did communicate with Plaintiff in writing.   For the most part, the notes are not clear on their face whether they were statements prepared in advance or

---

[122]   Doc. 59-20, Ex. 20 to Pl.'s Mot. for Partial Summ. J., Offender Orientation Handbook p. 32.

at the hearings.   The only note that clearly indicates it was written at the time of the hearing is an exchange about starting the hearing.  At least one of the officer defendants suggests a plausible reason that the notes were not submitted with the other documentation, to wit, that only those notes which Plaintiff wanted to include were submitted.   A jury needs to sort out this testimony.

Plaintiff's testimony focuses on the hearings themselves and whether he had an "equal opportunity to participate in [each] hearing[] or a meaningful opportunity to be heard and present a defense."[123]  Yet, the evidence also reveals that, before and after the hearings, he acknowledged receipt of information about the charges against him, notice of the hearing, and receipt of the final report.  He also took advantage of the opportunity to give a written statement at some point in the process.  Plaintiff filed grievances to appeal each of the negative outcomes.  There is no evidence that Plaintiff did not understand the charges, his right to give a written statement, the punishment, or his right to and the process for appeal.

With regard to the closed captioning, the evidence, as a whole, indicates that there is no written policy but that there is a general policy in favor of keeping it on at all times.  However, there is also evidence that the general policy was not followed for

---

[123]    Doc. 59-1, Ex. 1 to Pl.'s Mot. for Summ. J., Pl.'s Decl. ¶¶ 12, 20, 27, 34, 40, 48, 57, 64.

long periods of time.  By involving his ADS caseworker, Plaintiff
was able to have closed captioning activated again, but only for
short periods.   The evidence suggests that the hearing-capable
inmates prevailed on officers to turn off the closed captioning.
Although Plaintiff wishes to have closed captioning on at all
times, the evidence lacks detail of particular instances when
officers refused Plaintiff's requests to turn it on or turned it
off while he was watching.

Enough conflicts and questions remain to prohibit a decision
in favor of either party.  More importantly, the evidence does not
lend itself to a decision as a matter of law on whether Plaintiff
was excluded from participation in or denied the benefits of either
the disciplinary program for offenders or the recreational activity
of television viewing.[124]  Without a doubt, Plaintiff was included
in the disciplinary process and television viewing to certain
degrees.   Whether Defendant TDCJ provided the level of
accommodation to satisfy Title II and Section 504 is a question

---

[124]     Defendants TDCJ and Livingston include an argument, in their response
to Plaintiff's motion, against the award of injunctive relief dictating the
constant use of closed captioning.  They cite legal authority on preliminary and
permanent injunctions but state only the following in the way of argument:
"[Plaintiff] cannot show that he will be irreparably injured if the injunction
is not granted. [Plaintiff] has not provided any evidence. [Plaintiff's] claim
for injunctive relief must be dismissed as a matter of law." Doc. 60, Defs.'
Resp. p. 6.  Inferring from the law cited and the argument, the court understands
Defendants TDCJ and Livingston's point to be that injunctive relief is an
extraordinary remedy not appropriate for the injury alleged.  The court need not
decide this in connection with the pending motions for several reasons.  Most
prominently, Defendants TDCJ, Livingston, Szymczak, Sims, Kramer, and Melchor did
not move for summary judgment on Plaintiff's requests for injunctive relief and
did not fully brief the issue.  Additionally, Plaintiff did not prevail on the
merits and, thus, is not entitled to injunctive relief at this juncture.

best left to the jury, which can evaluate and weigh all of the evidence as it relates to Plaintiff's situation.

Turning to the third requirement, Defendants TDCJ and Livingston challenge Plaintiff's evidence that the alleged discrimination, if true, was by reason of Plaintiff's disability. In light of Defendant TDCJ's general policy to activate the closed captioning at all times, Defendants TDCJ and Livingston contend that Plaintiff can produce no evidence that it is off periodically because of or by reason of Plaintiff's disability or that Defendant TDCJ is "not attempting to accommodate his need for the closed captioning."[125]  However, the Fifth Circuit held that this causation requirement is not an issue when addressing allegations of failure to accommodate because liability attaches when a defendant denies required accommodations.  See Bennett-Nelson, 431 F.3d at 455. Defendant cannot prevail on this argument.

In sum, neither party has met its affirmative burden on summary judgment to show that no material facts are in dispute and that it is entitled to judgment as a matter of law.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants TDCJ, Szymczak, Sims, Kramer, and Melchor's motion be **DENIED**, Defendant Martinez' motion be **DENIED**, and Plaintiff's dispositive motion be **DENIED**.  Plaintiff's Motion for Spoliation Sanction is

---

[125]     Doc. 60, Defs.' Resp. p. 5.

**DENIED**.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th  day of October, 2013.

Nancy K. Johnson
United States Magistrate Judge